**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| ABC IP LLC, and<br>RARE BREED TRIGGERS, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>MAD RIVER FIREARM CO. LLC and<br>LANE BOGGS<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **4:26-md-03176-ALM**<br>**MDL 3176**<br><br><br>Civil Action No. 4:26-cv-00736-ALM |

**DEFENDANTS MAD RIVER FIREARM CO., LLC'S AND LANE BOGGS'S ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS**

Defendants Mad River Firearm Co. LLC and Lane Boggs (collectively, "Defendants") hereby answer Plaintiffs ABC IP, LLC, and Rare Breed Triggers, Inc.'s Complaint for Patent Infringement and assert their affirmative defenses as set forth below. Defendants deny that they have infringed any valid, enforceable claim of U.S. Patent Nos. 12,038,247, 12,031,784, 12,529,538, 12,578,159, and 12,636,403, and deny that Plaintiffs are entitled to any relief. Defendants use the same headings used in Plaintiffs' Complaint for convenience only and deny all allegations inherent or implied by those headings. Defendants deny all allegations in the Complaint that are not expressly admitted below. Any factual allegations admitted below are admitted only as to the specific admitted facts and not as to any purported conclusions, characterizations, or implications that might follow from the admitted facts.

**PARTIES**

1. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore deny them.

2. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore deny them.

3. Defendants admit that Mad River Firearm Co. LLC is an Ohio limited liability company and that it has an address at 1015 South Detroit Street, Bellefontaine, Ohio 43311. Defendants deny any remaining allegations in Paragraph 3.

4. Defendants admit that Lane Boggs is an individual residing at 307 Pickrelltown Road, West Liberty, Ohio 43357. Defendants deny all remaining allegations in Paragraph 4.

## JURISDICTION AND VENUE

5. Defendants admit that the Complaint purports to assert claims for patent infringement arising under 35 U.S.C. §§ 271(a)-(c), 281, and 284-85. Defendants deny that Plaintiffs have stated any valid claim for relief or that Defendants committed any actionable infringement. Defendants deny any remaining allegations in Paragraph 5.

6. Defendants admit that this Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1338.

7. The allegations in Paragraph 7 contain legal conclusions to which no response is required. To the extent a response is required, Defendants do not contest personal jurisdiction in the Southern District of Ohio for purposes of this action as filed. Defendants do not admit that personal jurisdiction is independently proper in the Eastern District of Texas apart from transfer for coordinated or consolidated pretrial proceedings in MDL No. 3176. Defendants deny the remaining allegations in Paragraph 7.

8. The allegations in Paragraph 8 contain legal conclusions to which no response is required. To the extent a response is required, Defendants admit that Plaintiffs filed this action in the Southern District of Ohio and that the action has been transferred for coordinated or consolidated pretrial proceedings in MDL No. 3176 in the Eastern District of Texas before the

Honorable Amos L. Mazzant, III. Defendants deny any alleged acts of infringement and deny any remaining allegations in Paragraph 8.

## BACKGROUND

9. Defendants admit that the Complaint purports to assert direct, contributory, and induced infringement of U.S. Patent Nos. 12,038,247, 12,031,784, 12,529,538, 12,578,159, and 12,636,403 (together, "the Asserted Patents"). Defendants deny that they have infringed, induced infringement of, or contributed to infringement of any valid and enforceable patent claims and deny any remaining allegations in Paragraph 9.

10. Defendants admit that Exhibit A to the Complaint purports to be a copy of U.S. Patent No. 12,038,247 ("the '247 Patent") and that the Complaint alleges that the '247 Patent issued on July 16, 2024. Defendants deny that each and every claim of the '247 Patent is valid and enforceable and deny any remaining allegations in Paragraph 10.

11. Defendants admit that Exhibit B to the Complaint purports to be a copy of U.S. Patent No. 12,031,784 ("the '784 Patent") and that the Complaint alleges that the '784 Patent issued on July 9, 2024. Defendants deny that each and every claim of the '784 Patent is valid and enforceable and deny any remaining allegations in Paragraph 11.

12. Defendants admit that Exhibit C to the Complaint purports to be a copy of U.S. Patent No. 12,529,538 ("the '538 Patent") and that the Complaint alleges that the '538 Patent issued on January 20, 2026. Defendants deny that each and every claim of the '538 Patent is valid and enforceable and deny any remaining allegations in Paragraph 12.

13. Defendants admit that Exhibit D to the Complaint purports to be a copy of U.S. Patent No. 12,578,159 ("the '159 Patent") and that the Complaint alleges that the '159 Patent issued on March 17, 2026. Defendants deny that each and every claim of the '159 Patent is valid and enforceable and deny any remaining allegations in Paragraph 13.

14. Defendants admit that Exhibit E to the Complaint purports to be a copy of U.S. Patent No. 12,636,403 ("the '403 Patent") and that the Complaint alleges that the '403 Patent issued on May 26, 2026. Defendants deny that each and every claim of the '403 Patent is valid and enforceable and deny any remaining allegations in Paragraph 14.

15. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 15 and therefore deny them.

16. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 16 and therefore deny them.

17. Defendants deny that Plaintiffs have complied with 35 U.S.C. § 287. Defendants specifically deny that merely requiring a licensee to mark establishes compliance with § 287 and demand strict proof that Plaintiffs and their authorized licensees making, offering for sale, selling, or importing articles practicing any Asserted Patent substantially and consistently complied with the applicable physical- or virtual-marking requirements. Defendants further deny that Plaintiffs provided Defendants legally sufficient actual notice of any alleged infringement before the filing of this action. Except as expressly admitted, Defendants deny the allegations in Paragraph 17.

18. Defendants deny the allegations in Paragraph 18.

## THE INVENTIONS

19. Defendants admit that a typical AR-15-pattern firearm may be considered semiautomatic. Defendants deny the remaining allegations in Paragraph 19 to the extent they purport to characterize technical operation, legal consequences, or infringement issues beyond Defendants' admissions.

20. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 20 and therefore deny them.

21. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 21 and therefore deny them.

22. Defendants admit that the ’247 and ’159 Patents purport to disclose certain trigger-related mechanisms for semiautomatic firearms. Defendants deny the remaining allegations in Paragraph 22 to the extent they characterize the novelty, scope, operation, or legal effect of those patents beyond the express language of the patents, which speak for themselves.

23. Defendants admit that the ’784 Patent purports to disclose certain trigger-related mechanisms for semiautomatic firearms. Defendants deny the remaining allegations in Paragraph 23 to the extent they characterize the novelty, scope, operation, or legal effect of the ’784 Patent beyond the express language of the patent, which speaks for itself.

24. Defendants admit that the ’538 Patent purports to disclose certain trigger-related mechanisms for semiautomatic firearms. Defendants deny the remaining allegations in Paragraph 24 to the extent they characterize the novelty, scope, operation, or legal effect of any patent beyond the express language of the patent, which speaks for itself.

25. Defendants admit that the ’403 Patent purports to disclose and claim certain trigger-related mechanisms. Defendants deny the remaining allegations in Paragraph 25 to the extent they characterize the novelty, scope, operation, or legal effect of those patents beyond their express language, which speaks for itself.

26. Defendants admit that patent claims define the scope of the inventions claimed in a patent. Defendants deny any allegation that any claim of any Asserted Patent is valid, enforceable, or infringed and deny any remaining allegations in Paragraph 26.

## THE INFRINGING DEVICES

27. Defendants admit that the Complaint alleges that Defendants have made, used, sold, or offered for sale products that the Plaintiffs label the “Infringing Devices.” Defendants deny that

any product sold or offered for sale by Defendants infringes any valid and enforceable claim of any Asserted Patent and deny any remaining allegations in Paragraph 27.

## I. <u>The Super Safety</u>

28. Defendants admit that they have sold or offered for sale the (3-Position) Super Safety. Defendants deny that any such product infringes any valid and enforceable claim of the ’247, ’784, ’538, ’159, or ’403 Patents and deny any remaining allegations in Paragraph 28.

29. Defendants admit that they have offered for sale the Super Safety through www.madriverfirearm.com. Defendants deny that any such offer for sale infringes any valid and enforceable claim of any Asserted Patent and deny any remaining allegations in Paragraph 29.

30. Defendants admit that Paragraph 30 purports to include images from Defendants’ website. Defendants deny any allegation that the images establish infringement or any other liability and deny any remaining allegations in Paragraph 30.

31. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 31 and therefore deny them.

## II. <u>The Atrius Selector</u>

32. Defendants admit that they have sold or offered for sale the Atrius Development 3-Position Forced Reset Selector (“Atrius FRS”). Defendants deny that any such product infringes any valid and enforceable claim of the ’247, ’784, ’159, or ’403 Patents and deny any remaining allegations in Paragraph 32.

33. Defendants admit that they have offered for sale the Atrius FRS through www.madriverfirearmco.com. Defendants deny that any such offer for sale infringes any valid and enforceable claim of any Asserted Patent and deny any remaining allegations in Paragraph 33.

34. Defendants admit that Paragraph 34 purports to include images from Defendants' website. Defendants deny any allegation that the images establish infringement or any other liability and deny any remaining allegations in Paragraph 34.

35. Defendants admit that Paragraph 35 purports to include images from Defendants' website. Defendants deny any allegation that the images establish infringement or any other liability and deny any remaining allegations in Paragraph 35.

36. Defendants admit Boggs is an owner of Mad River. Defendants deny any infringement of the Asserted Patents and deny any remaining allegations in Paragraph 36.

## COUNT I – INFRINGEMENT OF THE '247 PATENT

37. Paragraph 37 incorporates preceding allegations and requires no separate response. To the extent a response is required, Defendants refer to their responses to the preceding paragraphs and deny any remaining allegations in Paragraph 37.

38. Defendants deny the allegations in Paragraph 38.

39. Defendants deny the allegations in Paragraph 39.

40. Defendants deny that the referenced claim chart accurately compares the Super Safety to claim 15 of the '247 Patent. Defendants specifically deny that the Super Safety, when assembled and used as intended, meets each and every limitation of claim 15, whether literally or under the doctrine of equivalents, deny that any images or annotations in the chart establish infringement, and deny any remaining allegations in Paragraph 40.

41. Defendants deny that the referenced claim chart accurately compares the Atrius FRS to claim 15 of the '247 Patent. Defendants specifically deny that the Atrius FRS, when assembled and used as intended, meets each and every limitation of claim 15, whether literally or under the doctrine of equivalents, deny that any images or annotations in the chart establish infringement, and deny any remaining allegations in Paragraph 41.

42. Defendants deny the allegations in Paragraph 42.

43. Defendants deny the allegations in Paragraph 43.

44. Defendants deny the allegations of Paragraph 44.

45. Defendants deny the allegations of Paragraph 45.

46. Defendants deny the allegations of Paragraph 46.

47. Defendants deny the allegations of Paragraph 47.

48. Defendants deny the allegations of Paragraph 48.

49. Defendants deny the allegations of Paragraph 49.

50. Defendants deny the allegations of Paragraph 50.

51. Defendants deny the allegations of Paragraph 51.

## COUNT II – INFRINGEMENT OF THE ’784 PATENT

52. Paragraph 52 incorporates preceding allegations and requires no separate response. To the extent a response is required, Defendants refer to their responses to the preceding paragraphs and deny any remaining allegations in Paragraph 52.

53. Defendants deny the allegations in Paragraph 53.

54. Defendants deny the allegations in Paragraph 54.

55. Defendants deny that the referenced claim chart accurately compares the Super Safety to claim 1 of the ’784 Patent. Defendants specifically deny that the Super Safety, when assembled and used as intended, meets each and every limitation of claim 1, whether literally or under the doctrine of equivalents, deny that any images or annotations in the chart establish infringement, and deny any remaining allegations in Paragraph 55.

56. Defendants deny that the referenced claim chart accurately compares the Atrius FRS to claim 1 of the ’784 Patent. Defendants specifically deny that the Atrius FRS, when assembled and used as intended, meets each and every limitation of claim 1, whether literally or

under the doctrine of equivalents, deny that any images or annotations in the chart establish infringement, and deny any remaining allegations in Paragraph 56.

57. Defendants deny the allegations in Paragraph 57.

58. Defendants deny the allegations in Paragraph 58.

59. Defendants deny the allegations in Paragraph 59.

60. Defendants deny the allegations in Paragraph 60.

61. Defendants deny the allegations of Paragraph 61.

62. Defendants deny the allegations of Paragraph 62.

63. Defendants deny the allegations of Paragraph 62.

64. Defendants deny the allegations of Paragraph 63.

65. Defendants deny the allegations of Paragraph 65.

66. Defendants deny the allegations of Paragraph 66.

**COUNT III – INFRINGEMENT OF THE ’538 PATENT**

67. Paragraph 67 incorporates preceding allegations and requires no separate response. To the extent a response is required, Defendants refer to their responses to the preceding paragraphs and deny any remaining allegations in Paragraph 67.

68. Defendants deny the allegations in Paragraph 68.

69. Defendants deny the allegations in Paragraph 69.

70. Defendants deny that the referenced claim chart accurately compares the Super Safety to claim 1 of the ’538 Patent. Defendants specifically deny that the Super Safety, when assembled and used as intended, meets each and every limitation of claim 1, whether literally or under the doctrine of equivalents, deny that any images or annotations in the chart establish infringement, and deny any remaining allegations in Paragraph 70.

71. Defendants deny the allegations in Paragraph 71.

72. Defendants deny the allegations in Paragraph 72.

73. Defendants deny the allegations of Paragraph 73.

74. Defendants deny the allegations of Paragraph 74.

75. Defendants deny the allegations of Paragraph 75.

76. Defendants deny the allegations of Paragraph 76.

77. Defendants deny the allegations of Paragraph 77.

78. Defendants deny the allegations of Paragraph 78.

79. Defendants deny the allegations of Paragraph 79.

80. Defendants deny the allegations of Paragraph 80.

## COUNT IV – INFRINGEMENT OF THE ’159 PATENT

81. Paragraph 81 incorporates preceding allegations and requires no separate response. To the extent a response is required, Defendants refer to their responses to the preceding paragraphs and deny any remaining allegations in Paragraph 81.

82. Defendants deny the allegations in Paragraph 82.

83. Defendants deny the allegations in Paragraph 83.

84. Defendants deny that the referenced claim chart accurately compares the Super Safety to claim 1 of the ’159 Patent. Defendants specifically deny that the Super Safety, when assembled and used as intended, meets each and every limitation of claim 1, whether literally or under the doctrine of equivalents, deny that any images or annotations in the chart establish infringement, and deny any remaining allegations in Paragraph 84.

85. Defendants deny that the referenced claim chart accurately compares the Atrius FRS to claim 1 of the ’159 Patent. Defendants specifically deny that the Atrius FRS, when assembled and used as intended, meets each and every limitation of claim 1, whether literally or

under the doctrine of equivalents, deny that any images or annotations in the chart establish infringement, and deny any remaining allegations in Paragraph 85.

86. Defendants deny the allegations in Paragraph 86.

87. Defendants deny the allegations in Paragraph 87.

88. Defendants deny the allegations of Paragraph 88.

89. Defendants deny the allegations of Paragraph 89.

90. Defendants deny the allegations of Paragraph 90.

91. Defendants deny the allegations of Paragraph 91.

92. Defendants deny the allegations of Paragraph 92.

93. Defendants deny the allegations of Paragraph 93.

94. Defendants deny the allegations of Paragraph 94.

95. Defendants deny the allegations of Paragraph 95.

**COUNT V – INFRINGEMENT OF THE ’403 PATENT**

96. Paragraph 98 incorporates preceding allegations and requires no separate response. To the extent a response is required, Defendants refer to their responses to the preceding paragraphs and deny any remaining allegations in Paragraph 96.

97. Defendants deny the allegations in Paragraph 97.

98. Defendants deny the allegations in Paragraph 98.

99. Defendants deny that the referenced claim chart accurately compares the Super Safety to claim 38 of the ’403 Patent. Defendants specifically deny that the Super Safety, when assembled and used as intended, meets each and every limitation of claim 38, whether literally or under the doctrine of equivalents, deny that any images or annotations in the chart establish infringement, and deny any remaining allegations in Paragraph 99.

100. Defendants deny that the referenced claim chart accurately compares the Atrius FRS to claim 38 of the '403 Patent. Defendants specifically deny that the Atrius FRS, when assembled and used as intended, meets each and every limitation of claim 38, whether literally or under the doctrine of equivalents, deny that any images or annotations in the chart establish infringement, and deny any remaining allegations in Paragraph 100.

101. Defendants deny the allegations in Paragraph 101.

102. Defendants deny the allegations in Paragraph 102.

103. Defendants deny the allegations in Paragraph 103.

104. Defendants deny the allegations of Paragraph 104.

105. Defendants deny the allegations of Paragraph 105.

106. Defendants deny the allegations of Paragraph 106.

107. Defendants deny the allegations of Paragraph 107.

108. Defendants deny the allegations of Paragraph 108.

109. Defendants deny the allegations of Paragraph 109.

## **RESPONSE TO PLAINTIFFS' PRAYER FOR RELIEF**

No response to the prayer for relief is required. To the extent a response is required, Defendants deny that Plaintiffs are entitled to any relief against Defendants and request that judgment be entered in Defendants' favor, that Plaintiffs take nothing on their claims, and that all requested relief be denied.

## **DEMAND FOR JURY TRIAL**

No response to the demand for jury trial is required. To the extent a response is required, Defendants deny that Plaintiffs have any cognizable claim that merits resolution by a jury. Defendants demand a trial by jury on all issues so triable.

**AFFIRMATIVE DEFENSES**

Defendants assert the following defenses without assuming any burden of pleading or proof that would otherwise rest with Plaintiffs and without admitting that any defense identified below is properly characterized as an affirmative defense. Defendants reserve the right to amend this Answer and their defenses as additional information becomes known through investigation, discovery, claim construction, expert analysis, or other proceedings.

**FIRST DEFENSE – FAILURE TO STATE A CLAIM**

The Complaint fails to state a claim upon which relief can be granted.

**SECOND DEFENSE – NON-INFRINGEMENT OF THE ASSERTED PATENTS**

Defendants have not infringed and do not infringe any valid, enforceable claim of any Asserted Patent under any theory, including literally, under the doctrine of equivalents, directly, contributorily, by inducement, willfully, or otherwise.

**THIRD DEFENSE – INVALIDITY OF THE ASSERTED PATENTS**

The asserted claims of the Asserted Patents are invalid for failure to comply with one or more requirements of Title 35 of the United States Code, including without limitation 35 U.S.C. §§ 101, 102, 103, 112, and/or 116, as further alleged in Defendants' Counterclaims.

**FOURTH DEFENSE – PROSECUTION HISTORY ESTOPPEL AND DISCLAIMER**

Plaintiffs are estopped from construing any valid claim of the Asserted Patents to cover or include, either literally or under the doctrine of equivalents, any accused product in view of statements, amendments, arguments, admissions, disclaimers, and/or representations made to the United States Patent and Trademark Office during prosecution of the applications leading to the issuance of the Asserted Patents.

**FIFTH DEFENSE – LACK OF ACTUAL NOTICE; LIMITATION ON PATENT DAMAGES**

To the extent Plaintiffs, their predecessors, assignees, licensees, or other authorized persons making, offering for sale, selling, or importing articles practicing any Asserted Patent failed substantially and consistently to mark those articles in compliance with 35 U.S.C. § 287(a), Plaintiffs may not recover damages for alleged infringement occurring before Defendants received legally sufficient actual notice of a specific charge of infringement concerning a specific Asserted Patent and accused product.

On information and belief, Plaintiffs and/or their licensees have made, offered for sale, or sold products that Plaintiffs contend embody one or more Asserted Patents without substantially and consistently marking those products in compliance with § 287(a), including FRT-15L3, FRT-MR3, FRT-15C3, FRT-SG3, and FRT-RD3. Merely imposing a contractual marking requirement upon a licensee does not establish actual marking compliance or reasonable efforts to ensure compliance.

Before Plaintiffs filed this action, Defendants did not receive a cease-and-desist letter or other communication providing patent-and-product-specific notice of a charge of infringement. Knowledge of a patent's existence, generalized awareness of Plaintiffs' patent portfolio, or alleged willfulness does not independently constitute actual notice under § 287(a). Accordingly, any recovery of patent damages is limited to otherwise-proven infringement occurring after legally sufficient notice. Once Defendants identify specific unmarked articles reasonably believed to practice an Asserted Patent, Plaintiffs bear the burden of proving that those articles do not practice the patent or that marking substantially complied with § 287(a).

**SIXTH DEFENSE – EQUITABLE DEFENSES**

Plaintiffs' claims for equitable relief are barred or limited by waiver, equitable estoppel, acquiescence, and/or unclean hands. Laches is asserted only to the extent legally available and not to bar patent damages incurred within the period prescribed by 35 U.S.C. § 286. Intervening rights are asserted only to the extent an asserted claim was substantively amended or newly issued through a proceeding giving rise to such rights.

**SEVENTH DEFENSE – NO EXCEPTIONAL CASE OR ATTORNEYS' FEES FOR PLAINTIFFS' CLAIMS**

Plaintiffs' claims are not subject to an exceptional case finding under 35 U.S.C. § 285, and Plaintiffs are not entitled to their costs, attorneys' fees, or enhanced monetary relief.

**EIGHTH DEFENSE – LICENSE, EXHAUSTION, AND NO DOUBLE RECOVERY**

Plaintiffs' claims for patent infringement are precluded in whole or in part to the extent any accused products are imported by, sold by or to, offered for sale by, made by, made for, or otherwise supplied directly or indirectly by or to any entity having an express or implied license to any Asserted Patent; to the extent Plaintiffs' claims are barred by patent exhaustion; and/or to the extent Plaintiffs seek double recovery for alleged infringement attributable to the same product, transaction, or act.

**NINTH DEFENSE – PATENT MISUSE**

Plaintiffs have engaged in patent misuse by attempting to leverage the Asserted Patents to improperly monopolize a field of long-known technology, by pursuing scattershot litigation against dealers and competitors in an effort to chill lawful competition, and by seeking to extend the scope of alleged patent rights beyond lawful bounds, including by asserting claims Plaintiffs knew or should have known are invalid and not infringed. Any such misuse renders the Asserted Patents unenforceable unless and until the misuse is purged.

**TENTH DEFENSE – NO WILLFULNESS OR ENHANCED DAMAGES**

Defendants have not acted willfully. Plaintiffs cannot meet their burden to show that Defendants had the requisite knowledge or intent, or engaged in conduct beyond typical infringement, and any claim for enhanced patent damages under 35 U.S.C. § 284 is barred. Plaintiffs must prove the required knowledge and culpability separately for each Asserted Patent. Before Plaintiffs filed this action, Defendants had not received a cease-and-desist letter or other patent-and-product-specific charge that their conduct infringed any Asserted Patent. Generalized awareness of Plaintiffs, their patent portfolio, or litigation against others does not establish that Defendants knew of a particular patent and deliberately infringed a known claim.

**ELEVENTH DEFENSE – NO IRREPARABLE HARM OR BASIS FOR INJUNCTION**

Plaintiffs are not entitled to preliminary or permanent injunctive relief because they cannot show success on the merits, irreparable harm, inadequacy of legal remedies, that the balance of hardships favors an injunction, or that the public interest supports injunctive relief. Any alleged injury is fully compensable through monetary remedies, and the public interest favors competition and lawful aftermarket innovation.

**TWELFTH DEFENSE – INEQUITABLE CONDUCT**

To the extent supported by the particularized allegations in Defendants' patent-unenforceability Counterclaims, the asserted claims of the Asserted Patents are unenforceable due to inequitable conduct. On information and belief, individuals associated with the prosecution of one or more of the Asserted Patents, including at least attorney Glenn D. Bellamy and other substantively involved, knowingly withheld material prior art and/or made affirmative representations to the United States Patent and Trademark Office with the specific intent to deceive, rendering the asserted claims unenforceable.

**THIRTEENTH DEFENSE – NO CAUSATION OR DAMAGES CAUSED BY DEFENDANT**

No act or omission of Defendants was a substantial factor in bringing about any damage alleged by Plaintiffs, nor was any act or omission of Defendants a contributing cause thereof. Plaintiffs' claims are barred, in whole or in part, because any alleged damages were caused in whole or in part by the acts or omissions of Plaintiffs or other third parties, and not by Defendants.

**FOURTEENTH DEFENSE – NO CONTRIBUTORY OR INDUCED PATENT INFRINGEMENT**

Plaintiffs' claims for induced and contributory patent infringement are barred because Defendants have not knowingly induced any direct infringement, have not possessed the specific intent required for inducement, have not sold or offered for sale any component specially made or specially adapted for use in an infringement of any valid and enforceable claim, and have not sold or offered for sale any component lacking substantial noninfringing uses. Plaintiffs also cannot establish, for each Asserted Patent, an underlying act of direct infringement; Defendants' knowledge of that particular patent; Defendants' knowledge that the specifically induced acts constituted infringement; affirmative conduct specifically intended to cause infringement; or, for contributory infringement, a component satisfying every requirement of 35 U.S.C. § 271(c).

**FIFTEENTH DEFENSE – FAILURE TO MITIGATE**

Plaintiffs' claims for damages, injunctive relief, and other remedies are barred or limited because Plaintiffs failed to take reasonable steps to mitigate any alleged damages or harm.

**SIXTEENTH DEFENSE – PRECLUSION, ESTOPPEL, LAW OF THE CASE, AND EFFECT OF MANUFACTURER AND MDL DETERMINATIONS**

Plaintiffs' claims are barred, limited, or otherwise subject to reduction in whole or in part by issue preclusion, claim preclusion, judicial estoppel, law of the case, the customer-suit and manufacturer-action doctrines, and/or other principles of comity, efficiency, and coordinated

adjudication arising from prior, pending, or future determinations in related actions involving the same accused product lines, asserted patents, alleged injuries, and requested relief. Those related proceedings include, without limitation, the declaratory-judgment and related actions involving Atrius Development Group Corp., Inc. concerning the accused Atrius FRS products; actions involving DNT LLC, Zach Morrow, or other designers/manufacturers of the accused Super Safety products; Federal Circuit proceedings arising from those actions; and earlier-filed or coordinated reseller actions pending before this Court in MDL No. 3176.

To the extent this Court, the Federal Circuit, any transferor court, or any transferee court has determined or later determines issues concerning claim construction, product operation, infringement, non-infringement, validity, invalidity, prior art, unenforceability, prosecution conduct, irreparable harm, adequacy of legal remedies, balance of hardships, public interest, willfulness, inducement, damages, entitlement to injunctive relief, or any other issue common to Plaintiffs' claims against Defendants, Plaintiffs are precluded and/or estopped from relitigating those issues, taking contrary positions, or seeking duplicative, inconsistent, or broader relief against Defendants. Plaintiffs likewise are barred from reasserting arguments, claims, or requested relief that have been rejected, or that are inconsistent with positions taken or rulings entered, in the Atrius manufacturer actions, the DNT and/or other Super Safety proceedings, related Federal Circuit proceedings, or other earlier-filed or coordinated reseller actions in MDL No. 3176. Defendants reserve all rights to invoke the preclusive, estoppel, law-of-the-case, persuasive, or case-management effect of any such ruling, order, judgment, finding, claim construction, factual determination, or appellate decision. Defendants further reserve the right to seek appropriate coordination, stays, or other case-management relief based on overlapping manufacturer and MDL proceedings.

**SEVENTEENTH DEFENSE – NO PRE-ISSUANCE DAMAGES OR PROVISIONAL RIGHTS**

Plaintiffs may not recover patent-infringement damages for any alleged act occurring before issuance of the applicable Asserted Patent. To the extent Plaintiffs seek a reasonable royalty for pre-issuance activity under 35 U.S.C. § 154(d), such relief is barred because Plaintiffs cannot establish each statutory prerequisite, including actual notice to Defendants of the pertinent, published patent application and substantial identity between the claims of the published application and the issued patent.

**EIGHTEENTH DEFENSE – NO DIRECT INFRINGEMENT OF COMPLETED CLAIM COMBINATIONS BY RETAIL SALE OF STANDALONE COMPONENTS**

Defendants' sale or offer for sale of a standalone selector or component does not constitute direct infringement of any asserted claim requiring a complete firearm, trigger assembly, or other multi-component combination. Plaintiffs must prove that Defendants themselves performed an act enumerated in 35 U.S.C. § 271(a) with respect to a product containing every limitation of the asserted claim. Assembly or use by an unaffiliated customer cannot be attributed to Defendants as direct infringement absent a legally sufficient basis.

**NINETEENTH DEFENSE – APPORTIONMENT; LOST PROFITS; PLAINTIFF-SPECIFIC DAMAGES**

Any reasonable-royalty or lost-profits award must be apportioned to the incremental value of the claimed invention, excluding the value of unpatented components, conventional firearm functionality, trademarks, marketing, goodwill, and other nonpatented features. Plaintiffs may not invoke the entire-market-value rule, recover duplicative damages through multiple Plaintiffs or overlapping patents, or recover convoyed-sales damages without satisfying the applicable legal and evidentiary requirements. Any claim for lost profits further requires proof, by the particular Plaintiff claiming the loss of demand for the patented product, absence of acceptable noninfringing

alternatives, manufacturing and marketing capacity, causation, and the amount of profit that Plaintiff would have earned.

**TWENTIETH DEFENSE – OWNERSHIP, EXCLUSIONARY RIGHTS, AND ENTITLEMENT TO RELIEF**

For each Asserted Patent and each relevant period, Plaintiffs bear the burden to establish an enforceable chain of title, ABC's ownership, the nature and scope of any rights granted to Rare Breed, and the particular Plaintiffs' entitlement to the category of damages or equitable relief sought. No Plaintiff may recover another entity's alleged loss, damages arising outside the period in which that Plaintiff held the required rights, or a duplicative recovery for the same accused act, product, or sale.

**RESERVATION OF RIGHT TO ASSERT ADDITIONAL DEFENSES**

Defendants have not knowingly or intentionally waived any applicable defenses and reserve the right to assert and rely upon other applicable defenses that may become available or apparent throughout the course of this action. Defendants reserve the right to amend, or seek leave to amend, their answer, including their affirmative and other defenses.

**COUNTERCLAIMS**

Defendants and Counterclaimants Mad River Firearm Co. LLC and Lane Boggs ("Counterclaimants") assert the following counterclaims against Plaintiffs ABC IP, LLC ("ABC"), and Rare Breed Triggers, Inc. ("Rare Breed") (together, "Counterclaim Defendants"), and state as follows:

**NATURE OF ACTION**

1. These Counterclaims seek declaratory and related relief concerning Counterclaim Defendants' allegations that Defendants have infringed certain asserted patents.

2. These Counterclaims include patent-related claims for declarations of non-infringement, invalidity, unenforceability, and lack of entitlement to willfulness, enhanced damages, exceptional-case findings, or injunctive relief with respect to the Asserted Patents.

## PARTIES

3. Mad River Firearm Co. LLC is an Ohio limited liability company with an address at 1015 South Detroit Street, Bellefontaine, Ohio 43311. Mad River Co. is a named defendant in Plaintiffs' Complaint.

4. Lane Boggs is an individual residing at 307 Pickrelltown Road, West Liberty, Ohio 43357. Mr. Boggs is a named defendant in Plaintiffs' Complaint.

5. Mad River Co. is an Ohio-based retailer for firearms, firearm parts and accessories, ammunition, optics, build kits, and tactical gear.

6. Mad River Co. does not design, manufacture, modify, customize, or otherwise alter the accused products. Mad River Co. sources these products directly or indirectly (*i.e.*, through commercial distributors or wholesalers) from the manufacturers themselves.

7. ABC IP, LLC is alleged to be a Delaware limited liability company with an address at 8 The Green, Suite A, Dover, Delaware 19901. ABC alleges to be the current owner by assignment of all right, title, and interest in and to the Asserted Patents.

8. Rare Breed Triggers, Inc. is alleged to be a Texas corporation with an address at 2710 Central Freeway, Suite 150-151, Wichita Falls, Texas 76306. Rare Breed is alleged to be the exclusive licensee of the Asserted Patents.

## JURISDICTION AND VENUE

9. This Court has subject-matter jurisdiction over these Counterclaims pursuant to 28 U.S.C. §§ 1331, 1338, 1367, 2201, and 2202, and under the Patent Act, because these

Counterclaims arise under federal patent law and seek declaratory relief concerning Plaintiffs' claims asserted in the action.

10. An actual, substantial, and justiciable controversy exists between Counterclaimants and Counterclaim Defendants concerning whether Counterclaimants have infringed any valid and enforceable claim of any Asserted Patent and whether the Asserted Patents are valid and enforceable.

11. Venue was proper in the Southern District of Ohio, where Counterclaim Defendants filed this action. This action is presently before this Court pursuant to 28 U.S.C. § 1407 for coordinated or consolidated pretrial proceedings in MDL No. 3176. These counterclaims arise from the same transactions and occurrences as the Complaint.

**BACKGROUND**

12. Counterclaim Defendants' Complaint asserts direct, induced, and contributory infringement of U.S. Patent Nos. 12,038,247 (the "'247 Patent"), 12,031,784 (the "'784 Patent"), 12,529,538 (the "'538 Patent"), 12,578,159 (the "'159 Patent"), and 12,636,403 (the "'403 Patent") (collectively, the "Asserted Patents").

13. Counterclaim Defendants allege that ABC owns the Asserted Patents and that Rare Breed is the exclusive licensee of the Asserted Patents.

14. Counterclaim Defendants accuse Counterclaimants of making, using, selling, and/or offering for sale the "(3-Position) Super Safety" (referred to herein as the "Super Safety") and the "Atrius Development 3 Position Forced Reset Selector" (referred to herein as the "Atrius FRS").

15. Counterclaimants do not design, manufacture, modify, customize, or otherwise alter the Super Safety or Atrius FRS. Counterclaimants source these products directly or indirectly from the products' respective manufacturers.

16. Counterclaimants sell the Super Safety and Atrius FRS products in the same conditions in which those products are received from their respective manufacturers.

17. Counterclaim Defendants allege that the Super Safety infringes at least the ’247, ’784, ’538, ’159, and ’403 Patents, and that Atrius FRS infringes at least the ’247, ’784, ’159, and ’403 Patents.

18. Counterclaim Defendants seek, among other relief, preliminary and permanent injunctive relief, damages, increased damages, costs, interest, attorneys’ fees, and findings of willfulness and exceptional-case status.

19. All issues concerning the Asserted Patents either have been, are presently being, or will soon be addressed by this Court or other courts in related manufacturer-focused or earlier-filed reseller cases. Before this Court are two declaratory-judgment actions brought by Atrius, the manufacturer of the Atrius FRS, against Counterclaim Defendants (and various related entities). *See* Nos. 4:26-cv-00448-ALM; 4:26-cv-00984-ALM. As of the filing of these Counterclaims, ABC and Rare Breed moved for a preliminary injunction against (a) Atrius directly in the -00448 action and (b) a set of retailer defendants similarly situated to Mad River Co. Further, this MDL includes infringement actions brought by ABC and Rare Breed against the designer of the accused Super Safety product (Timothy Hoffman; No. 4:26-cv-00378-ALM), and at least two major manufacturers of the Super Safety device: AS Designs (No. 4:26-cv-00370-ALM) and DNT (No. 4:26-cv-00377-ALM). Like they have against Atrius and its dealers, ABC and Rare Breed have filed preliminary-injunction motions against Hoffman, AS Designs, DNT, and a host of other retailer defendants who allegedly sell Super Safety products. Thus, there exists substantial overlap of patent issues between this action and those previously brought by Counterclaim Defendants.

20. Counterclaimants deny that they have infringed any valid and enforceable claim of any Asserted Patent, deny that any Asserted Patent is valid and enforceable, and deny that Counterclaim Defendants are entitled to any relief.

## COUNT I – DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE ’247 PATENT

21. Counterclaimants repeat and reallege the allegations in the preceding paragraphs of their Counterclaims as if fully set forth herein.

22. An actual, substantial, and justiciable controversy exists between Counterclaimants and the Counterclaim Defendants concerning whether Counterclaimants have infringed, directly or indirectly, literally or under the doctrine of equivalents, any valid and enforceable claim of the ’247 Patent through the sale, offer for sale, distribution, marketing, or support of the Super Safety and/or Atrius FRS. Counterclaim Defendants have asserted that the Super Safety and Atrius FRS embody technology allegedly claimed in the ’247 Patent and have accused resellers of these accused products, including Counterclaimants, of infringing at least claim 15 of the ’247 Patent.

23. The Super Safety does not infringe and has not infringed any valid and enforceable claim of the ’247 Patent, either directly or indirectly, literally or under the doctrine of equivalents. By way of example and without limitation, Plaintiffs assert claim 15 of the ’247 Patent against the accused Super Safety product and allege that, when assembled and used as intended, the Super Safety is part of a forced-reset trigger mechanism that functions as a cam that forces reset of the trigger and locks the trigger during the cycle of operation.

24. Claim 15 requires, among other things, a cam having a cam lobe that, in a second position, “forces said trigger member towards said set position,” and further requires that, in forced-reset semi-automatic mode, rearward movement of the bolt carrier causes rearward pivoting of the hammer “such that said disconnector hook is prevented from catching said hammer hook.”

Plaintiffs' infringement theory assumes that the Super Safety cam and lever structure satisfies those limitations when installed with bundled AR-pattern fire-control components.

25. By way of example and without limitation, the accused Super Safety does not satisfy the limitation requiring that the disconnector hook be "prevented from catching" the hammer hook. On information and belief, if the Super Safety is installed in a firearm with the relevant fire-control components and set to forced-reset mode, the disconnector hook is not prevented from catching and holding the hammer hook; depending on the configuration and operation of the bundled components, rearward pivoting of the hammer would cause the disconnector hook to catch and hold the hammer hook.

26. Instead, the continued rearward movement of the bolt carrier may cause the lever to rotate the cam, which forces the trigger member toward the set position and may later cause the disconnector to release the hammer hook. That sequence is materially different from the claimed requirement that the disconnector hook be prevented from catching the hammer hook in the first instance.

27. By way of further example and without limitation, Plaintiffs' theory improperly treats the Super Safety cam, lever, and selector functionality as if those structures satisfy the same "cam" relationship disclosed in the '247 Patent. The accused Super Safety uses a push-button or sliding selector architecture, while the '247 Patent's disclosed cam and safety-selector architecture is directed to a pivoting arrangement. On information and belief, the application which led to the '247 Patent originally disclosed the cam and safety selector only as pivotable, and that later "movably mounted" language was added after public disclosure of the Super Safety's slidably mounted push-button safety-selector functionality.

28. Accordingly, by way of example and without limitation, the accused Super Safety does not meet at least the forced-reset disconnector-prevention limitation and does not satisfy the claimed cam / trigger-member / selector relationships of claim 15 as properly construed. Because the Super Safety does not satisfy at least these limitations, the manufacture, use, sale, offer for sale, distribution, marketing, or support of the Super Safety does not infringe and has not infringed any valid and enforceable claim of the ’247 Patent.

29. The Atrius FRS does not infringe and has not infringed any valid and enforceable claim of the ’247 Patent, either directly or indirectly, literally or under the doctrine of equivalents. By way of example and without limitation, claim 15 of the ’247 Patent requires that, in the forced reset semi-automatic mode, “rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook is prevented from catching said hammer hook.” The Atrius FRS does not satisfy that negative limitation because, during operation of an AR-15-pattern firearm with the Atrius FRS installed and set to forced-reset / full-semi mode, the disconnector hook catches the hammer hook during rearward movement of the bolt carrier.

30. More specifically, during rearward travel of the bolt carrier group, the bolt carrier depresses the hammer downward about its pivot point, and once the hammer is pressed down sufficiently far, the disconnector hook engages the hammer hook. Only after the engagement does the Atrius FRS lever arm, also actuated by rearward movement of the bolt carrier, later cause disengagement of the disconnector when the trigger is forced toward the set position. Thus, the disconnector hook is not “prevented from catching” the hammer hook, as claim 15 requires.

31. By way of further example and without limitation, the Atrius FRS also does not include the claimed cam structure disclosed and described in the ’247 Patent. The ’247 Patent discloses a cam that is separate from a safety selector, a cam lobe interacting with a cam follower

of a non-mil-spec trigger member, and trigger member, hammer, and disconnector components that are not standard mil-spec AR-15 components. The Atrius FRS includes a safety selector and is designed to operate with standard mil-spec components; it does not require installation of a non-mil-spec trigger, non-mil-spec hammer, or non-mil-spec disconnector.

32. Accordingly, by way of example and without limitation, the Atrius FRS does not meet at least the limitations requiring "a cam having a cam lobe … said cam being movable between a first position and a second position, in said second position said cam lobe forces said trigger member toward said set position," or the forced-reset-mode limitation requiring that "said disconnector hook is prevented from catching said hammer hook." Because the Atrius FRS does not satisfy at least these limitations, the manufacture, use, sale, offer for sale, distribution, marketing, or support of the Atrius FRS does not infringe and has not infringed any valid and enforceable claim of the '247 Patent.

33. Counterclaimants are therefore entitled to a declaration that they have not infringed, do not infringe, and are not liable for direct infringement, induced infringement, contributory infringement, willful infringement, or infringement under the doctrine of equivalents of any valid and enforceable claim of the '247 Patent through any conduct involving the Super Safety and/or Atrius FRS.

**COUNT II – DECLARATORY JUDGMENT OF INVALIDITY OF THE '247 PATENT**

34. Counterclaimants repeat and reallege the allegations in the preceding paragraphs of their Counterclaims as if fully set forth herein.

35. An actual, substantial, and justiciable controversy exists between Counterclaimants and the Counterclaim Defendants concerning whether the asserted claims of the '247 Patent are invalid. Counterclaim Defendants assert at least claim 15 of the '247 Patent against the Super

Safety and Atrius FRS and accuse resellers of these accused products, including Counterclaimants, of infringement.

36. At least claim 15 of the ’247 Patent is invalid for failure to satisfy one or more requirements of Title 35 of the United States Code, including without limitation 35 U.S.C. §§ 101, 102, 103, 112, and/or 116. By way of example and without limitation, claim 15 is rendered obvious by U.S. Patent No. 7,398,723 (“Blakley ’723”) in view of the Tommy Triggers FRT-15-3MD.

37. Blakley ’723 issued on July 15, 2008, more than fourteen years before the ’247 Patent’s earliest asserted priority date of September 8, 2022, and qualifies as prior art under at least 35 U.S.C. § 102(a)(1). The Tommy Triggers FRT-15-3MD was also on sale before the ’247 Patent’s alleged priority date, as Rare Breed’s own February 2022 complaint against Tommy Triggers acknowledged, and therefore likewise qualifies as prior art.

38. By way of example and without limitation, Blakley ’723 discloses many limitations of claim 15, including a forced-reset trigger for use in an AR-15, a hammer, trigger member, disconnector, and cam arrangement, while the FRT-15-3MD supplies the remaining limitations concerning the three-position selector and dual standard semi-automatic / forced-reset operation. Blakley ’723 and the FRT-15-3MD disclose each limitation of claim 15 and that a person of ordinary skill in the art would have had ample motivation to combine those references. *See* Ex. G-5, 15-18.

39. By way of further example and without limitation, adding a three-position selector to Blakley ’723 would have been obvious because three-position selectors corresponding to safe, semi-automatic, and forced-reset or full-auto modes were standard on AR-15 and M-16 platforms and on firearms capable of simulated or actual automatic fire. A shooter would have been motivated to use such a selector because semi-automatic fire allows more precise and less

ammunition-consumptive shooting, while forced-reset or full-auto mode allows a greater volume of fire.

40. Counterclaimants attach as Exhibit G-1 a claim chart that Atrius cited in its opposition to Counterclaim Defendants' August 1, 2026 preliminary-injunction motion. *Atrius Dev. Grp. Corp., Inc. v. ABC IP, LLC, et al.*, No. 4:26-cv-00448-ALM (E.D. Tex.), Dkt. 54 (PI Motion), Dkt. 88 (Response in Opposition). Exhibit G-1 demonstrates that each limitation of claim 15 of the '247 Patent was found in the prior art as of the alleged priority date.

41. Accordingly, at least claim 15 of the '247 Patent is invalid under 35 U.S.C. §§ 102 and/or 103. Counterclaimants are entitled to a declaration that the asserted claims of the '247 Patent are invalid.

42. Furthermore, Counterclaimants seek declaratory judgment of invalidity as to all claims of the '247 Patent that Counterclaim Defendants have asserted, or later assert, against Counterclaimants, their accused products, or their alleged conduct in this action. The prior-art-based arguments presented above address the specific claim charted or otherwise identified in the Complaint against Counterclaimants. These allegations are exemplary and without limitation. Counterclaimants reserve the right to assert additional invalidity grounds, facts, prior art, combinations, claim-specific analyses, and statutory bases under 35 U.S.C. §§ 101, 102, 103, 112, and/or 116 for any asserted claim of the '247 Patent, including any claims Counterclaim Defendants later identify, chart, assert, or ask to add in this action, in MDL No. 3176, or in any related proceeding.

**COUNT III – DECLARATORY JUDGMENT OF UNENFORCEABILITY OF THE '247 PATENT**

43. Counterclaimants repeat and reallege the allegations in the preceding paragraphs of their Counterclaims as if fully set forth herein.

44. An actual, substantial, and justiciable controversy exists between Counterclaimants and the Counterclaim Defendants concerning whether the ’247 Patent is unenforceable. Counterclaim Defendants assert at least claim 15 of the ’247 Patent against the Super Safety and Atrius FRS and accuse resellers of these accused products, including Counterclaimants, of infringement.

45. The ’247 Patent is unenforceable due to inequitable conduct and/or related equitable doctrines. By way of example and without limitation, individuals associated with prosecution of the application that issued as the ’247 Patent, including at least Glenn D. Bellamy and Lawrence DeMonico, knew of material prior art and information and failed to disclose that information to the USPTO with the specific intent to deceive the USPTO.

46. By way of example and without limitation, the Examiner allowed the ’247 Patent after identifying Blakley ’723 as the closest prior art and determining that Blakley ’723, on its own, did not disclose certain limitations concerning a three-position selector, standard semi-automatic operation in which the disconnector catches the hammer and the user manually releases the trigger, and forced-reset operation in which the selector prevents the disconnector from catching the hammer.

47. At least Bellamy and DeMonico knew of the Tommy Triggers FRT-15-3MD, which disclosed the same limitations that the Examiner believed were missing from Blakley ’723, including a three-position selector and dual standard/forced-reset operation. The omitted Tommy Triggers FRT-15-3MD was but-for material because it included the same three-position selector and disconnector functionality the Examiner found missing from Blakley ’723. Ex. G-5, 20.

48. The surrounding facts support a reasonable inference that the material information was withheld with specific intent to deceive, including the applicants’ submission of an extensive

information disclosure statement (IDS) while failing to disclose the Tommy Triggers FRT-15-3MD device and related materials, the prosecution significance of the omitted material, and the prior litigation involving the same or overlapping forced-reset technology.

49. Counterclaimants are entitled to a declaration that the ’247 Patent is unenforceable due to inequitable conduct, infectious unenforceability where applicable, prosecution misconduct, unclean hands, and/or related equitable doctrines. The allegations described above are exemplary and without limitation and are based on information presently available to Counterclaimants, including allegations and arguments developed in the Atrius declaratory-judgment action, proceedings involving manufacturers or resellers of other accused products, and any pleadings, briefs, and supporting material submitted in those proceedings. Counterclaimants reserve all rights to assert additional unenforceability grounds, inequitable-conduct facts, prosecution-history analyses, infectious-unenforceability theories, unclean-hands theories, and related equitable doctrines.

**COUNT IV – DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE ’784 PATENT**

50. Counterclaimants repeat and reallege the allegations in the preceding paragraphs of their Counterclaims as if fully set forth herein.

51. An actual, substantial, and justiciable controversy exists between Counterclaimants and the Counterclaim Defendants concerning whether Counterclaimants have infringed, directly or indirectly, literally or under the doctrine of equivalents, any valid and enforceable claim of the ’784 Patent through the sale, offer for sale, distribution, marketing, or support of the Super Safety and/or Atrius FRS. Counterclaim Defendants have asserted that the Super Safety and Atrius FRS embody technology allegedly claimed in the ’784 Patent and have accused resellers of these accused products, including Counterclaimants, of infringing at least claim 1 of the ’784 Patent.

52. The Super Safety does not infringe and has not infringed any valid and enforceable claim of the ’784 Patent, either directly or indirectly, literally or under the doctrine of equivalents. By way of example and without limitation, Plaintiffs assert claim 1 of the ’784 Patent and allege that the Super Safety operates as an extended trigger-member locking device with a locking member movable between locked and unlocked positions.

53. Claim 1 of the ’784 Patent requires a “locking member” having both “a body portion that is movably supported” and “an upwardly extending deflectable portion that is separately movable relative to the body portion between an extended position and a deflected position.” Plaintiffs’ theory relies on the Super Safety’s cam / lever arrangement and the dovetail connection described in the Super Safety Guide.

54. By way of example and without limitation, the Super Safety does not satisfy claim 1 because Plaintiffs’ theory does not identify a claimed locking member with a body portion and a separately movable upwardly extending deflectable portion that together move as claim 1 requires. Plaintiffs’ instead attempt to treat the Super Safety’s cam, lever, and related selector functionality as the claimed locking member, body portion, and deflectable portion.

55. Plaintiffs’ infringement theory treats cam lobes as a locking member, even though those lobes do not correspond to the locking member disclosed in the patent. On information and belief, in safe mode, the Super Safety’s cam remains fixed and always blocks the trigger tail, while in standard semi-automatic mode the cam pivots but the cam lobe does not block the trigger tail in any pivoting position. The claimed locking member is not merely any structure that interacts with the trigger; it must have the claimed body portion and separately movable upwardly extending deflectable portion, and the actuating bolt-carrier contact must cause the claimed locking member

to move from the first position to the second position. Plaintiffs' reliance on the Super Safety's cam and lever does not satisfy those distinct requirements as properly construed.

56. Accordingly, by way of example and without limitation, the accused Super Safety does not meet at least the "locking member," "body portion," "upwardly extending deflectable portion," and claimed movement limitations of claim 1 of the '784 Patent. Because the Super Safety does not satisfy at least these limitations, the manufacture, use, sale, offer for sale, distribution, marketing, or support of the Super Safety does not infringe and has not infringed any valid and enforceable claim of the '784 Patent.

57. The Atrius FRS does not infringe and has not infringed any valid and enforceable claim of the '784 Patent, either directly or indirectly, literally or under the doctrine of equivalents. By way of example and without limitation, claim 1 of the '784 Patent requires an "extended trigger member locking device" that includes "a locking member" movable between locked and unlocked positions, where the locking member has both "a body portion that is movably supported" and "an upwardly extending deflectable portion that is separately movable relative to the body portion between an extended position and a deflected position."

58. The Atrius FRS does not contain a "locking member" as claimed in the '784 Patent. At most, Counterclaim Defendants have identified the Atrius FRS lever arm as an allegedly upwardly extending deflectable portion, but the Atrius FRS does not include a separate body portion that combines with that lever arm to form the claimed locking member. Because the accused structure lacks the required body portion, there is no claimed locking member that is movable between the claimed first and second positions.

59. In the alternative, even if the safety selector were treated as the claimed body portion, the Atrius FRS still would not infringe. During operation, only the lever arm pivots when

struck by the bolt carrier group after a round is fired, while the safety selector remains static due to the detent pin and does not pivot or otherwise move with the lever arm from the claimed first position to the claimed second position. Thus, Counterclaim Defendants' theory improperly attempts to stitch together the Atrius FRS's stationary safety selector and pivoting lever arm into a single claimed locking member even though the alleged combined structure does not move as the claim requires.

60. By way of further example and without limitation, the '784 Patent distinguishes between movement of the locking member as a whole and separate movement of the upwardly extending deflectable portion. Counterclaim Defendants' infringement theory collapses those distinct movements by relying on the same pivoting lever arm both as the separately movable deflectable portion and as the structure that allegedly provides the locking/unlocking movement. Counterclaim Defendants have not and cannot point to distinct movements to satisfy the claim language.

61. Accordingly, by way of example and without limitation, the Atrius FRS does not meet all limitations of claim 1. Because the Atrius FRS does not satisfy at least these limitations, the manufacture, use, sale, offer for sale, distribution, marketing, or support of the Atrius FRS does not infringe and has not infringed any valid and enforceable claim of the '784 Patent.

62. Counterclaimants are therefore entitled to a declaration that they have not infringed, do not infringe, and are not liable for direct infringement, induced infringement, contributory infringement, willful infringement, or infringement under the doctrine of equivalents of any valid and enforceable claim of the '784 Patent through any conduct involving the Super Safety and/or Atrius FRS.

**COUNT V – DECLARATORY JUDGMENT OF INVALIDITY OF THE ’784 PATENT**

63. Counterclaimants repeat and reallege the allegations in the preceding paragraphs of their Counterclaims as if fully set forth herein.

64. An actual, substantial, and justiciable controversy exists between Counterclaimants and the Counterclaim Defendants concerning whether the asserted claims of the ’784 Patent are invalid. Counterclaim Defendants assert at least claim 1 of the ’784 Patent against the Super Safety and Atrius FRS and accuse resellers of these accused products, including Counterclaimants, of infringement.

65. At least claim 1 of the ’784 Patent is invalid for failure to satisfy one or more requirements of Title 35 of the United States Code, including without limitation 35 U.S.C. §§ 101, 102, 103, 112, and/or 116. By way of example and without limitation, claim 1 is anticipated and/or rendered obvious by Blakley ’723.

66. Blakley ’723 is prior art to the ’784 Patent because it issued on July 15, 2008, years before the earliest possible priority date of the ’784 Patent.

67. By way of example and without limitation, claim 1 of the ’784 Patent is directed to an “extended trigger member locking device” having a locking member movable between locked and unlocked positions, including a body portion and an upwardly extending deflectable portion. As apparently interpreted by Counterclaim Defendants, these concepts were disclosed in Blakley ’723 before the ’784 Patent, including the relevant locking and trigger-control structures.

68. Counterclaimants attach as Exhibit G-2 a claim chart that Atrius cited in its opposition to Counterclaim Defendants’ August 1, 2026 preliminary-injunction motion. *Atrius Dev. Grp. Corp., Inc. v. ABC IP, LLC, et al.*, No. 4:26-cv-00448-ALM (E.D. Tex.), Dkt. 54 (PI Motion), Dkt. 88 (Response in Opposition). Exhibit G-2 demonstrates that each limitation of claim 1 of the ’784 Patent was found in the prior art as of the alleged priority date.

69. Accordingly, at least claim 1 of the ’784 Patent is invalid under 35 U.S.C. §§ 102 and/or 103. Counterclaimants are entitled to a declaration that the asserted claims of the ’784 Patent are invalid.

70. Furthermore, Counterclaimants seek declaratory judgment of invalidity as to all claims of the ’784 Patent that Counterclaim Defendants have asserted, or later assert, against Counterclaimants, their accused products, or their alleged conduct in this action. The prior-art-based arguments presented above address the specific claim charted or otherwise identified in the Complaint against Counterclaimants. These allegations are exemplary and without limitation. Counterclaimants reserve the right to assert additional invalidity grounds, facts, prior art, combinations, claim-specific analyses, and statutory bases under 35 U.S.C. §§ 101, 102, 103, 112, and/or 116 for any asserted claim of the ’784 Patent, including any claims Counterclaim Defendants later identify, chart, assert, or ask to add in this action, in MDL No. 3176, or in any related proceeding.

## COUNT VI – DECLARATORY JUDGMENT OF UNENFORCEABILITY OF THE ’784 PATENT

71. Counterclaimants repeat and reallege the allegations in the preceding paragraphs of their Counterclaims as if fully set forth herein.

72. An actual, substantial, and justiciable controversy exists between Counterclaimants and the Counterclaim Defendants concerning whether the ’784 Patent is unenforceable. Counterclaim Defendants assert at least claim 1 of the ’784 Patent against the Super Safety and Atrius FRS and accuse resellers of these accused products, including Counterclaimants, of infringement.

73. The ’784 Patent is unenforceable due to inequitable conduct, infectious unenforceability, prosecution misconduct, unclean hands, and/or related equitable doctrines.

These allegations are pled in the alternative and are based on presently available information concerning Counterclaim Defendants' prosecution conduct, enforcement campaign, alleged concealment or burying of material prior art, and assertion of related patents.

74. By way of example and without limitation, related pleadings and expert materials allege a broader pattern in which Counterclaim Defendants and their counsel failed to fairly present material prior-art records concerning Stakes '067, Tac-Con 3MR, Bonner '263, FRT-15-3MD, and classic gating art, while later asserting FRT-related patents in serial reseller actions. Those materials also allege concealment of prosecution activities involving related forced-reset-trigger applications.

75. Counterclaimants presently lack the full prosecution record and discovery necessary to plead every particularized fact supporting unenforceability of the '784 Patent, but reserve the right to amend this Counterclaim to identify additional individuals, references, omissions, misrepresentations, prosecution events, and related misconduct once those facts are developed.

76. Counterclaimants are entitled to a declaration that the '784 Patent is unenforceable due to inequitable conduct, infectious unenforceability where applicable, prosecution misconduct, unclean hands, and/or related equitable doctrines. The allegations described above are exemplary and without limitation and are based on information presently available to Counterclaimants, including allegations and arguments developed in the Atrius declaratory-judgment action, proceedings involving manufacturers or resellers of other accused products, and any pleadings, briefs, and supporting material submitted in those proceedings. Counterclaimants reserve all rights to assert additional unenforceability grounds, inequitable-conduct facts, prosecution-history

analyses, infectious-unenforceability theories, unclean-hands theories, and related equitable doctrines.

**COUNT VII – DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE ’538 PATENT**

77. Counterclaimants repeat and reallege the allegations in the preceding paragraphs as if fully set forth herein.

78. Counterclaimants deny that they have infringed, directly or indirectly, literally or under the doctrine of equivalents, any valid and enforceable claim of the ’538 Patent through any conduct involving the Super Safety. Counterclaimants presently lack complete discovery regarding Plaintiffs’ infringement theories, the precise accused configurations, manufacturer technical documents, and any claim-construction positions Plaintiffs may advance. Counterclaimants therefore reserve the right to assert and develop non-infringement grounds for the ’538 Patent after discovery, claim construction, expert analysis, and consultation with the manufacturer and other dealer/manufacturer defense teams.

**COUNT VIII – DECLARATORY JUDGMENT OF INVALIDITY OF THE ’538 PATENT**

79. Counterclaimants repeat and reallege the allegations in the preceding paragraphs of their Counterclaims as if fully set forth herein.

80. An actual, substantial, and justiciable controversy exists between Counterclaimants and the Counterclaim Defendants concerning whether claim 1 of the ’538 Patent is invalid. Counterclaim Defendants assert claim 1 of the ’538 Patent against the Super Safety and accuse resellers of Super Safety products, including Counterclaimants, of infringement.

81. Claim 1 of the ’538 Patent is invalid for failure to satisfy one or more requirements of Title 35 of the United States Code, including without limitation 35 U.S.C. §§ 101, 102, 103, 112, and/or 116. By way of example and without limitation, claim 1 is anticipated or rendered

obvious by public disclosures of the Super Safety, the Super Safety Guide, and related Super Safety materials predating or otherwise qualifying as prior art to the ’538 Patent. Plaintiffs’ own infringement theory maps claim 1 of the ’538 Patent to the Super Safety, including the cam selector, lever, longitudinal slot, first and second recesses, trigger tail portion, and first, second, and third operating modes.

82. By way of further example and without limitation, the Super Safety Guide dated July 19, 2023 is repeatedly cited by Plaintiffs as support for their infringement allegations. Plaintiffs allege that the Super Safety Guide shows the Super Safety’s dual-mode cam selector, lever, longitudinal slot, first and second recesses, and trigger tail interaction. If the Super Safety and related public materials are prior art to claim 1, then Plaintiffs’ own infringement mapping strongly supports invalidity of claim 1 under §§ 102 and/or 103.

83. By way of further example and without limitation, claim 1 of the ’538 Patent is invalid under § 116 and related inventorship / derivation principles to the extent discovery confirms that the claimed cam-selector / lever / trigger-tail arrangement was derived from or misappropriated from the true inventor or from publicly disclosed Super Safety designs rather than invented by the named inventor(s). Counterclaimants understand that there is a known inventorship and/or derivation dispute concerning the subject matter claimed in the ’538 Patent, including the relationship between the claimed subject matter and Super Safety designs attributed to Timothy Hoffman and Hoffman Tactical. Counterclaimants reserve the right to further develop these allegations after review of the complete prosecution history, assignments, conception documents, public disclosures, communications, and discovery concerning inventorship and derivation.

84. Accordingly, claim 1 of the ’538 Patent is invalid under 35 U.S.C. §§ 102, 103, 112, and/or 116. Counterclaimants are entitled to a declaration that claim 1 of the ’538 Patent is invalid.

**COUNT IX – DECLARATORY JUDGMENT OF UNENFORCEABILITY OF THE ’538 PATENT**

85. Counterclaimants repeat and reallege the allegations in the preceding paragraphs of their Counterclaims as if fully set forth herein.

86. An actual, substantial, and justiciable controversy exists between Counterclaimants and the Counterclaim Defendants concerning whether the ’538 Patent is unenforceable. Counterclaim Defendants assert claim 1 of the ’538 Patent against the Super Safety and accuse resellers of Super Safety products, including Counterclaimants, of infringement.

87. The ’538 Patent is unenforceable due to inequitable conduct, unclean hands, inventorship misconduct, derivation, prosecution misconduct, and/or related equitable doctrines. By way of example and without limitation, Plaintiffs’ infringement theory relies on the Super Safety and the Super Safety Guide to show every limitation of claim 1 of the ’538 Patent, including the cam selector, lever, longitudinal slot, first and second recesses, trigger tail portion, and mode-selection features.

88. On information and belief, those same Super Safety disclosures and materials were known or should have been known to those involved in obtaining, assigning, or enforcing the ’538 Patent. Plaintiffs’ own enforcement campaign against Super Safety products demonstrates that Counterclaim Defendants had knowledge of the Super Safety design and considered it material to the ’538 Patent’s claimed subject matter.

89. By way of further example and without limitation, Counterclaimants understand that there is a known inventorship and/or derivation dispute concerning the subject matter claimed

in the ’538 Patent, including the relationship between the claimed subject matter and Super Safety designs attributed to Timothy Hoffman and Hoffman Tactical. If discovery confirms that the named inventor, assignor, assignee, or prosecuting counsel knowingly withheld material inventorship, derivation, prior-public-disclosure, or Super Safety design information from the USPTO, or misrepresented the identity of the true inventor or the source of the claimed subject matter, the ’538 Patent is unenforceable under inequitable conduct, unclean hands, derivation, and related equitable doctrines.

90. Counterclaimants reserve the right to amend this Counterclaim after discovery and review of the full prosecution history, inventor files, assignment documents, communications with the alleged inventor(s), Super Safety development records, USPTO submissions, and related enforcement records. Counterclaimants are entitled to a declaration that the ’538 Patent, including claim 1, is unenforceable.

**COUNT X – DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE ’159 PATENT**

91. Counterclaimants repeat and reallege the allegations in the preceding paragraphs of their Counterclaims as if fully set forth herein.

92. An actual, substantial, and justiciable controversy exists between Counterclaimants and the Counterclaim Defendants concerning whether Counterclaimants have infringed, directly or indirectly, literally or under the doctrine of equivalents, any valid and enforceable claim of the ’159 Patent through the sale, offer for sale, distribution, marketing, or support of the Super Safety and/or Atrius FRS. Counterclaim Defendants have asserted that the Super Safety and Atrius FRS embody technology allegedly claimed in the ’159 Patent and have accused resellers of these accused products, including Counterclaimants, of infringing at least claim 1 of the ’159 Patent.

93. The Super Safety does not infringe and has not infringed any valid and enforceable claim of the ’159 Patent, either directly or indirectly, literally or under the doctrine of equivalents. By way of example and without limitation, Plaintiffs assert claim 1 of the ’159 Patent and allege that the accused Super Safety operates in a standard semi-automatic mode and forced-reset semi-automatic mode.

94. Claim 1 requires, among other things, that in the second mode, rearward movement of the bolt means causes rearward pivoting of the hammer such that the disconnector hook is prevented from holding the hammer, and that after the bolt means moves forward into battery, the user can pull the trigger to fire the firearm. Plaintiffs allege that the Super Safety satisfies this limitation because rearward movement of the bolt means causes rearward pivoting of the hammer and the cam forces the trigger member toward reset such that the disconnector hook is prevented from holding the hammer hook.

95. By way of example and without limitation, if the Super Safety is installed in a firearm with the relevant components and set to forced-reset mode, the disconnector hook is prevented from catching and holding the hammer hook; depending on the configuration and operation of the bundled components, rearward pivoting of the hammer would cause the disconnector hook to catch and hold the hammer back.

96. Continued rearward movement of the cycling bolt carrier may cause the lever to rotate the cam, which forces the trigger member to the set position and may later cause the disconnector to release the hammer hook. But a later release caused by cam rotation is materially different from preventing the disconnector hook from holding the hammer in the first instance, as required by claim 1.

97. By way of further example and without limitation, the ’159 Patent requires a particular relationship between a cam, trigger member, disconnector, and two modes of operation. Plaintiffs’ theory relies on the Super Safety cam and lever architecture, but that architecture does not meet the claimed standard-mode and forced-reset-mode limitations as properly construed.

98. Accordingly, by way of example and without limitation, the Super Safety does not meet at least the forced-reset disconnector-prevention / disconnector-holding limitation of claim 1 of the ’159 Patent. Because the Super Safety does not satisfy at least these limitations, the manufacture, use, sale, offer for sale, distribution, marketing, or support of the Super Safety does not infringe and has not infringed any valid and enforceable claim of the ’159 Patent.

99. The Atrius FRS does not infringe and has not infringed any valid and enforceable claim of the ’159 Patent, either directly or indirectly, literally or under the doctrine of equivalents. By way of example and without limitation, the asserted claims of the ’159 Patent require, among other things, both a “cam” and a “safety selector” as distinct components.

100. The intrinsic record confirms that the claimed cam and safety selector are separate structures. The specification does not treat the cam and safety selector as the same structure or as a single commingled component, and the patent’s figures consistently depict the cam as physically separate from the safety selector. Accordingly, for the asserted claims of the ’159 Patent to read on the Atrius FRS, the Atrius FRS must possess a separate cam and selector.

101. The Atrius FRS does not possess separate cam and selector structures as required by the ’159 Patent. The Atrius FRS lever arm moves transversely along the axis of rotation of the selector when the selector is rotated from semi-automatic position to forced-reset position. In semi-automatic mode, the lever arm is displaced from the trigger and cannot cause a reset motion; in forced-reset mode, the lever arm and selector act together to reset the trigger and control when the

trigger can release the hammer. Thus, the Atrius FRS lever arm and selector cannot operate independently in the way required by Plaintiffs' reading of the '159 Patent. The Atrius FRS cannot have a functioning lever arm without a selector, or a functioning selector without a lever arm, and those two elements do not exist separately as would be required to satisfy the asserted claims of the '159 Patent. Counterclaim Defendants' own infringement theory treats the alleged cam and selector as part of a singular composite structure, which is materially different from the separate cam and selector disclosed and claimed in the '159 Patent.

102. Accordingly, by way of example and without limitation, the Atrius FRS does not meet at least the limitations requiring separate cam and selector structures. Because the Atrius FRS does not satisfy at least these limitations, the manufacture, use, sale, offer for sale, distribution, marketing, or support of the Atrius FRS does not infringe and has not infringed any valid and enforceable claim of the '159 Patent.

103. Counterclaimants are therefore entitled to a declaration that they have not infringed, do not infringe, and are not liable for direct infringement, induced infringement, contributory infringement, willful infringement, or infringement under the doctrine of equivalents of any valid and enforceable claim of the '159 Patent through any conduct involving the Super Safety and/or Atrius FRS.

**COUNT XI – DECLARATORY JUDGMENT OF INVALIDITY OF THE '159 PATENT**

104. Counterclaimants repeat and reallege the allegations in the preceding paragraphs of their Counterclaims as if fully set forth herein.

105. An actual, substantial, and justiciable controversy exists between Counterclaimants and the Counterclaim Defendants concerning whether the asserted claims of the '159 Patent are invalid. Counterclaim Defendants assert at least claim 1 of the '159 Patent against the Super Safety

and Atrius FRS and accuse resellers of these accused products, including Counterclaimants, of infringement.

106. At least claim 1 of the ’159 Patent is invalid for failure to satisfy one or more requirements of Title 35 of the United States Code, including without limitation 35 U.S.C. §§ 101, 102, 103, 112, and/or 116. By way of example and without limitation, claim 1 is anticipated and/or rendered obvious by Blakley ’723 in view of the Tommy Triggers FRT-15-3MD.

107. The ’159 Patent is a continuation of the ’247 Patent and claims the same subject matter in relevant respects, so Blakley ’723 and the FRT-15-3MD are prior art to at least claim 1 of the ’159 Patent for the same reasons they are prior art to the ’247 Patent. Blakley ’723 and the FRT-15-3MD disclose each limitation of claim 1 of the ’159 Patent.

108. By way of example and without limitation, Blakley ’723 discloses many limitations of claim 1, including a forced-reset trigger for use in an AR-15, a hammer, trigger member, disconnector, and cam arrangement, while the FRT-15-3MD supplies the remaining limitations concerning the three-position selector and dual standard semi-automatic / forced-reset operation.

109. Counterclaimants attach as Exhibit G-3 a claim chart that Atrius cited in its opposition to Counterclaim Defendants’ August 1, 2026 preliminary-injunction motion. *Atrius Dev. Grp. Corp., Inc. v. ABC IP, LLC, et al.*, No. 4:26-cv-00448-ALM (E.D. Tex.), Dkt. 54 (PI Motion), Dkt. 88 (Response in Opposition). Exhibit G-3 demonstrates that each limitation of claim 1 of the ’159 Patent was found in the prior art as of the alleged priority date.

110. Accordingly, at least claim 1 of the ’159 Patent is invalid under 35 U.S.C. §§ 102 and/or 103. Counterclaimants are entitled to a declaration that the asserted claims of the ’159 Patent are invalid.

111. Furthermore, Counterclaimants seek declaratory judgment of invalidity as to all claims of the ’159 Patent that Counterclaim Defendants have asserted, or later assert, against Counterclaimants, their accused products, or their alleged conduct in this action. The prior-art-based arguments presented above address the specific claim charted or otherwise identified in the Complaint against Counterclaimants. These allegations are exemplary and without limitation. Counterclaimants reserve the right to assert additional invalidity grounds, facts, prior art, combinations, claim-specific analyses, and statutory bases under 35 U.S.C. §§ 101, 102, 103, 112, and/or 116 for any asserted claim of the ’159 Patent, including any claims Counterclaim Defendants later identify, chart, assert, or ask to add in this action, in MDL No. 3176, or in any related proceeding.

## COUNT XII – DECLARATORY JUDGMENT OF UNENFORCEABILITY OF THE ’159 PATENT

112. Counterclaimants repeat and reallege the allegations in the preceding paragraphs of their Counterclaims as if fully set forth herein.

113. An actual, substantial, and justiciable controversy exists between Counterclaimants and the Counterclaim Defendants concerning whether the ’159 Patent is unenforceable. Counterclaim Defendants assert at least claim 1 of the ’159 Patent against the Super Safety and Atrius FRS and accuse resellers of these accused products, including Counterclaimants, of infringement.

114. The ’159 Patent is unenforceable due to inequitable conduct, infectious unenforceability, and/or related equitable doctrines. By way of example and without limitation, the ’159 Patent is a continuation of the ’247 Patent and shares a common specification, priority chain, claimed subject matter, and prosecution lineage with the ’247 Patent.

115. The same inequitable conduct that renders the ’247 Patent unenforceable also renders the ’159 Patent unenforceable because the ’159 Patent is a continuation of the ’247 Patent. Ex. G-5, 23-24.

116. By way of further example and without limitation, Bellamy and DeMonico had actual knowledge of the structure, operation, public use, and on-sale activities of the Tommy Triggers FRT-15-3MD and the Rare Breed FRT-15E3 before the filing and prosecution of the application that issued as the ’159 Patent, but did not disclose those products or related materials to the USPTO. Those products are alleged to have been material to patentability because they disclosed the claimed three-position selector and forced-reset trigger functionality that was not otherwise before the Examiner.

117. The facts support a reasonable inference that Bellamy, DeMonico, and/or others associated with prosecution intentionally withheld material information from the USPTO with specific intent to deceive. At a minimum, these allegations support unenforceability under inequitable conduct and infectious-unenforceability principles.

118. Counterclaimants are entitled to a declaration that the ’159 Patent is unenforceable due to inequitable conduct, infectious unenforceability where applicable, prosecution misconduct, unclean hands, and/or related equitable doctrines. The allegations described above are exemplary and without limitation and are based on information presently available to Counterclaimants, including allegations and arguments developed in the Atrius declaratory-judgment action, proceedings involving manufacturers or resellers of other accused products, and any pleadings, briefs, and supporting material submitted in those proceedings. Counterclaimants reserve all rights to assert additional unenforceability grounds, inequitable-conduct facts, prosecution-history

analyses, infectious-unenforceability theories, unclean-hands theories, and related equitable doctrines.

**COUNT XIII – DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE ’403 PATENT**

119. Counterclaimants repeat and reallege the allegations in the preceding paragraphs of their Counterclaims as if fully set forth herein.

120. An actual, substantial, and justiciable controversy exists between Counterclaimants and the Counterclaim Defendants concerning whether Counterclaimants have infringed, directly or indirectly, literally or under the doctrine of equivalents, any valid and enforceable claim of the ’403 Patent through the sale, offer for sale, distribution, marketing, or support of the Super Safety and/or Atrius FRS. Counterclaim Defendants have asserted that the Super Safety and Atrius FRS embody technology allegedly claimed in the ’403 Patent and have accused resellers of these accused products, including Counterclaimants, of infringing at least claim 38 of the ’403 Patent.

121. The Super Safety does not infringe and has not infringed any valid and enforceable claim of the ’403 Patent, either directly or indirectly, literally or under the doctrine of equivalents. By way of example and without limitation, Plaintiffs assert claim 38 of the ’403 Patent and allege that the Super Safety is a forced-reset trigger mechanism comprising a hammer, disconnector, trigger member, and safety selector movable between standard semi-automatic and forced-reset semi-automatic positions.

122. Claim 38 requires a “safety selector adapted to be movable between a standard semi-automatic position and a forced reset semi-automatic position.” Plaintiffs allege that the Super Safety satisfies this limitation because the Super Safety is a safety selector adapted to move between those positions.

123. By way of example and without limitation, the Super Safety does not satisfy claim 38's safety-selector limitation as properly construed. The Super Safety cam acts as a safety selector and slides along a lateral axis to select not only standard semi-automatic mode and forced-reset mode, but also safe mode. The '403 Patent specification discloses and claims a safety selector that pivots or rotates to select a mode, whereas the Super Safety cam slides along its axis to select a mode.

124. By way of further example and without limitation, claim 38 recites a forced-reset trigger mechanism with a hammer, disconnector, trigger member, and safety selector operating in a particular relationship. Plaintiffs' infringement theory relies on treating the Super Safety cam as the safety selector while also relying on the cam and cam lobes for other claimed functions or structures. The accused structure cannot satisfy distinct claim limitations if doing so collapses separately recited components into the same structure contrary to the claim language and specification.

125. Accordingly, by way of example and without limitation, the Super Safety does not meet at least the claimed safety-selector and forced-reset-trigger-mechanism limitations of claim 38 of the '403 Patent as properly construed. Because the Super Safety does not satisfy at least these limitations, the manufacture, use, sale, offer for sale, distribution, marketing, or support of the Super Safety does not infringe and has not infringed any valid and enforceable claim of the '403 Patent.

126. The Atrius FRS does not infringe and has not infringed any valid and enforceable claim of the '403 Patent, either directly or indirectly, literally or under the doctrine of equivalents. By way of example and without limitation, claim 38 recites a "trigger member." The term "trigger member" is not an established or standard term of art for a conventional or mil-spec trigger; rather,

in view of the specification, it refers to a specifically configured trigger structure disclosed as trigger member 38, including surfaces used to carry out the patent's forced-reset operation.

127. The Atrius FRS does not have the claimed trigger member. The Atrius FRS uses a conventional mil-spec trigger and is compatible with multiple aftermarket trigger assemblies with conventional trigger-tail geometries, which lack the configured contact surfaces disclosed for trigger member 38 in the '403 Patent. In the Atrius FRS, rotating the selector to the forced-reset position shifts the lever arm transversely into alignment with the trigger, and it is the bolt carrier acting on that lever arm during cycling that forces the trigger toward reset. The Atrius FRS therefore does not reset the trigger through the configured hammer-to-trigger member interaction disclosed and claimed in the '403 Patent, and the "trigger member" limitation is absent from every asserted claim.

128. Accordingly, by way of example and without limitation, the Atrius FRS does not meet at least the "trigger member" limitation of claim 38 of the '403 Patent. Because the Atrius FRS does not satisfy at least this limitation, the manufacture, use, sale, offer for sale, distribution, marketing, or support of the Atrius FRS does not infringe and has not infringed any valid and enforceable claim of the '403 Patent.

129. Counterclaimants are therefore entitled to a declaration that they have not infringed, do not infringe, and are not liable for direct infringement, induced infringement, contributory infringement, willful infringement, or infringement under the doctrine of equivalents of any valid and enforceable claim of the '403 Patent through any conduct involving the Super Safety and/or Atrius FRS.

**COUNT XIV – DECLARATORY JUDGMENT OF INVALIDITY OF THE '403 PATENT**

130. Counterclaimants repeat and reallege the allegations in the preceding paragraphs of their Counterclaims as if fully set forth herein.

131. An actual, substantial, and justiciable controversy exists between Counterclaimants and the Counterclaim Defendants concerning whether the asserted claims of the '403 Patent are invalid. Counterclaim Defendants assert at least claim 38 of the '403 Patent against the Super Safety and Atrius FRS and accuse resellers of these products, including Counterclaimants, of infringement.

132. At least claim 38 of the '403 Patent is invalid for failure to satisfy one or more requirements of Title 35 of the United States Code, including without limitation 35 U.S.C. §§ 101, 102, 103, 112, and/or 116. By way of example and without limitation, claim 38 is invalid for lack of written description and enablement because Counterclaim Defendants' infringement theory stretches the claim beyond the structures and operation disclosed in the specification.

133. By way of example and without limitation, the '403 Patent specification discloses a single trigger-member structure—trigger member 38, including a convex contact surface 58 and further contact surface 69—and a single means of forcing that trigger member to its set position, namely contact between the hammer surface and the trigger-member contact surface. The specification also treats a locking member as the only disclosed structure that holds the trigger member in the set position and prevents hammer follow in forced-reset mode because the disconnector is disabled in that mode.

134. Claim 38 is one of the broad later-added claims that omits the locking member that other independent claims of the '403 Patent require and that the specification describes as necessary to safe forced-reset operation. If claim 38 is construed broadly enough to cover products

that do not use the disclosed configured trigger member and locking-member architecture, claim 38 exceeds the written description and enablement support of the specification.

135. By way of example and without limitation, claim 38 is anticipated by Stakes ’067. Stakes ’067 and the commercial Tac-Con 3MR disclosed a hammer, disconnector, trigger member, and a selector movable among safe, semi-automatic, and assisted-reset semi-automatic modes years before the ’403 Patent.

136. By way of further example and without limitation, claim 38 is obvious over U.S. Patent No. 3,045,555 (“Stoner ’555”) in view of the ’223 Patent (“Rounds ’223”). Stoner ’555 issued more than six decades before the ’403 Patent’s earliest possible priority date, and Rounds ’223 issued on December 24, 2019, before the ’403 Patent’s alleged priority date. Stoner ’555 and Rounds ’223 disclose each limitation of claim 38. *See* Ex. G-5, 28-29.

137. A person of ordinary skill in the art would have been motivated to combine Stoner ’555 with Rounds ’223 because Rounds ’223 discloses a forced-reset device, while Stoner ’555 supplies a conventional three-position selector architecture for safe, semi-automatic, and automatic operation. Applying Stoner ’555’s three-position selector to Rounds ’223 yields conventional safe, semi-automatic, and forced-reset positions, and Stoner ’555’s method for disabling the disconnector in a third selector position would predictably operate with the Rounds ’223 disconnector because both designs turn on the same operative event: whether a disconnector catches or does not catch a hook on the hammer.

138. Counterclaimants attach as Exhibit G-4 a claim chart that Atrius cited in its opposition to Counterclaim Defendants’ August 1, 2026 preliminary-injunction motion. *Atrius Dev. Grp. Corp., Inc. v. ABC IP, LLC, et al.*, No. 4:26-cv-00448-ALM (E.D. Tex.), Dkt. 54 (PI

Motion), Dkt. 88 (Response in Opposition). Exhibit G-4 demonstrates that each limitation of claim 38 of the ’403 Patent was found in the prior art as of the alleged priority date.

139. Accordingly, at least claim 38 of the ’403 Patent is invalid under 35 U.S.C. §§ 102 and/or 103. Counterclaimants are entitled to a declaration that the asserted claims of the ’403 Patent are invalid.

140. Furthermore, Counterclaimants seek declaratory judgment of invalidity as to all claims of the ’403 Patent that Counterclaim Defendants have asserted, or later assert, against Counterclaimants, their accused products, or their alleged conduct in this action. The prior-art-based arguments presented above address the specific claim charted or otherwise identified in the Complaint against Counterclaimants. These allegations are exemplary and without limitation. Counterclaimants reserve the right to assert additional invalidity grounds, facts, prior art, combinations, claim-specific analyses, and statutory bases under 35 U.S.C. §§ 101, 102, 103, 112, and/or 116 for any asserted claim of the ’403 Patent, including any claims Counterclaim Defendants later identify, chart, assert, or ask to add in this action, in MDL No. 3176, or in any related proceeding.

**COUNT XV – DECLARATORY JUDGMENT OF NO WILLFUL PATENT INFRINGEMENT AND THAT PLAINTIFFS ARE NOT ENTITLED TO ENHANCED DAMAGES, AN EXCEPTIONAL-CASE FINDING, ATTORNEYS’ FEES, OR PATENT INJUNCTIVE RELIEF**

141. Counterclaimants repeat and reallege the allegations in the preceding paragraphs of their Counterclaims as if fully set forth herein.

142. An actual, substantial, and justiciable controversy exists between Counterclaimants and the Counterclaim Defendants concerning whether Counterclaimants have willfully infringed any valid and enforceable claim of any Asserted Patent, whether Counterclaim Defendants are entitled to enhanced damages under 35 U.S.C. § 284, whether Counterclaim Defendants are

entitled to an exceptional-case finding or attorneys' fees under 35 U.S.C. § 285, and whether Counterclaim Defendants are entitled to preliminary or permanent injunctive relief based on any alleged patent infringement by Counterclaimants.

143. Counterclaimants have not willfully infringed any valid and enforceable claim of any Asserted Patent. Substantial defenses of non-infringement, invalidity, and unenforceability exist for both accused product families, including the Super Safety and Atrius FRS, as set forth above and throughout the MDL proceedings.

144. Before Counterclaim Defendants filed this action, Counterclaimants had not received a cease-and-desist letter or other correspondence from Counterclaim Defendants, any affiliate, or their counsel providing legally sufficient actual notice of a specific charge that an identified product infringed an identified Asserted Patent.

145. Further, neither accused product family has been found to infringe any claims of the Asserted Patents.

146. Counterclaim Defendants are not entitled to preliminary or permanent injunctive relief against Counterclaimants.

147. Counterclaim Defendants are not entitled to enhanced damages, an exceptional-case finding, attorneys' fees, or patent injunctive relief because Counterclaimants have substantial defenses, have not engaged in egregious conduct, have not acted with the requisite knowledge or intent for willfulness, and have not engaged in conduct that would make this case exceptional. Counterclaim Defendants' allegations that Counterclaimants' acts were willful, exceptional, and deliberately harmful are disputed and are unsupported by a sufficient showing of infringement, validity, enforceability, irreparable harm, or causation.

148. Counterclaimants are therefore entitled to a declaration that Counterclaim Defendants are not entitled to a finding of willful patent infringement, enhanced patent damages, an exceptional-case finding, patent-related attorneys' fees, or preliminary or permanent injunctive relief against Counterclaimants.

**PRAYER FOR RELIEF ON PLAINTIFFS' CLAIMS AND COUNTERCLAIMANTS' COUNTERCLAIMS**

WHEREFORE, Defendants and Counterclaimants Mad River Co. LLC and Lane Boggs respectfully request that the Court:

A. Enter judgment in favor of Defendants and against Plaintiffs on every claim asserted in the Complaint;

B. Order that Plaintiffs take nothing on their claims, dismiss those claims with prejudice, and deny all declaratory, injunctive, monetary, enhanced, equitable, and other relief requested by Plaintiffs;

C. Enter judgment in favor of Counterclaimants and against Counterclaim Defendants on Counterclaimants' Counterclaims;

D. Declare that Counterclaimants have not directly infringed, induced infringement of, contributed to infringement of, or willfully infringed any valid and enforceable claim of any Asserted Patent, whether literally, under the doctrine of equivalents, or otherwise;

E. Declare that the Super Safety, Atrius FRS, and Counterclaimants' sale or offer for sale of those products do not infringe any valid and enforceable claim of the Asserted Patents under any theory asserted by Counterclaim Defendants;

F. Declare the asserted claims of the Asserted Patents invalid for failure to satisfy one or more requirements of Title 35 of the United States Code, as established through these proceedings;

G. Declare the asserted claims of the Asserted Patents unenforceable to the extent established through these proceedings;

H. Determine that any recovery of patent damages is barred or limited under 35 U.S.C. §§ 154(d), 286, 287, and other applicable law, including because of any failure to mark, absence of legally sufficient pre-suit actual notice, absence of any statutory basis for pre-issuance damages, failure to apportion, lack of causation, patent exhaustion, license, and prohibition against duplicative recovery;

I. Deny Plaintiffs any finding of willfulness, enhanced damages, entitlement to attorneys' fees, or preliminary or permanent injunctive relief;

J. Award Counterclaimants their taxable costs under Federal Rule of Civil Procedure 54(d)(1), 28 U.S.C. § 1920, and other applicable law;

K. If the Court determines that the applicable statutory standards are satisfied, award Counterclaimants their reasonable attorneys' fees under 35 U.S.C. § 285 and other applicable law;

L. Award post-judgment interest on any monetary award, including any award of fees or costs, as provided by law; and

M. Grant Counterclaimants such other and further legal or equitable relief as the Court deems just and proper.

## JURY DEMAND ON COUNTERCLAIMS

Counterclaimants demand a trial by jury on all issues and claims so triable.

Dated: October 16, 2026

Respectfully submitted,

*/s/ Conor M. Civins*
Conor M. Civins
Texas Bar No. 24040693
conor.civins@bracewell.com
Michael Chibib
Texas Bar No. 00793497
michael.chibib@bracewell.com
**BRACEWELL LLP**
111 Congress Avenue, Suite 2300
Austin, TX 78701-4061
Tel: (512) 472-7800
Fax: (800) 404-3970

Michael R. Moran
Ohio Supreme Court Registration No. 0063881
**Michael R. Moran Co., llc**
106 Short Street
P.O. Box 307437
Gahanna, Ohio 43230-7437 USA
(614) 476-6453
MRMoran@MRMoran.com

**Counsel for Defendants Mad River Firearm Co. LLC and Lane Boggs**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on October 16, 2026, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system.

*/s/ Conor M. Civins*
Conor M. Civins